Filed 7/8/14  In re J.L. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re J.L., a Person Coming Under the Juvenile Court Law. | B250860 (Los Angeles County Super. Ct. No. CK76604) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.L.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Emma Castro, Juvenile Court Referee.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Kim Nemoy, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Father J.L. (father) challenges the juvenile court's assumption of jurisdiction over his son J.L. (J.L.) and challenges the juvenile court's decision to deny him reunification services. We find no error and affirm.

## FACTS AND PROCEDURE

When J.L. was born in May 2013, he tested positive for methamphetamine. Following the filing of a Welfare and Institutions Code section 300[1] petition, the court sustained the following amended allegation against mother: J.L. "suffered from prenatal exposure to methamphetamine. The minor's mother . . . acknowledged that she used methamphetamine while pregnant with [J.L.] and a drug test on 5/18/2013 confirmed that both mother and the minor has ingested the drug. Further, the mother has a multi-year history of substance abuse including drug related convictions in 2006 and 2012. The child's sibling, [N.G.], received permanent placement services due to mother's substance abuse. The minor's half-siblings [received] permanent placement and the mother's substance abuse places the minor [J.L.] at substantial risk of serious physical harm." Maternal grandmother adopted J.L.'s two older siblings. Mother's criminal history included convictions for transportation of a controlled substance and possession of a controlled substance for sale.

Father was not at the hospital when J.L was born. He was incarcerated. Father's mother (grandmother) expressed a willingness to care for J.L. Grandmother told a social worker that father was arrested for possessing methamphetamine. Grandmother further explained that father had an older child with whom he had no contact. The court found father to be J.L.'s biological father. Sometime in May 2013, J.L. was placed in foster care and subsequently was moved to the care of his paternal grandmother.

On June 24, 2013, the petition was amended to allege that father has a history of convictions for drug-related offenses and was incarcerated for possession of a

---

[1]     All statutory references are to the Welfare and Institutions Code.

controlled substance for sale and transporting a controlled substance. Los Angeles County Department of Children and Family Services alleged that father's release date was in September 2014 and that his involvement in drug-related criminal activity placed J.L. at risk of physical harm. Mother claimed that the police planted the controlled substances in her house. She also watched as a deputy "pour[ed] meth on [father's] seat [in his car]." Father claimed that he did not use controlled substances, but sold them after he was laid off from his job. Father denied knowing that mother used methamphetamine. Father stated that he would not be released for 15 months (i.e. in September 2014).

The court sustained the allegations against father. The court discredited father's statements that he did not know mother was using methamphetamine. "It's incomprehensible to the court that father would not have known that at all while living with her, particularly because he is in custody for a drug-related issue." The court found by clear and convincing evidence that there were no reasonable means to protect J.L. without removing J.L. from father's custody. The court denied reunification services because father's release date was after the reunification period. The court recommended father participate in any programs available to inmates. Father timely appealed.

## DISCUSSION

### 1. *Jurisdiction*

Father argues the court's jurisdictional findings against him were not supported by substantial evidence. "On appeal, in reviewing a challenge to the sufficiency of the dependency court's jurisdictional findings, our power begins and ends with a determination as to whether substantial evidence exists, contradicted or uncontradicted, supporting the dependency court's determinations. We review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings." (*In re Noe F.* (2013) 213 Cal.App.4th 358, 366.)

Father argues that he did not know mother was using drugs and therefore could not have failed to adequately protect J.L. Father's argument is not persuasive because he ignores the court's finding discrediting father's denials. The court expressly found that father was aware of mother's drug use while pregnant and that evidence supported the finding that father failed to protect J.L. Father's involvement in drug-related criminal activity left him unable to protect J.L. from mother's drug abuse. In contrast to *In re Noe F., supra*, 213 Cal.App.4th at page 366 the court did not rely solely on father's incarceration when sustaining the count against him.

In any event, it is undisputed that jurisdiction over J.L. was proper based on mother's substance abuse. Father does not contest the jurisdictional finding as to mother. "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Thus the court properly took jurisdiction over J.L.

## 2. *Disposition*

At the outset, there is no merit to father's claim that the reversal of the jurisdictional findings against him mandates the reversal of the dispositional order. As we have explained substantial evidence supported the court's jurisdictional findings against him. Nor is there merit to father's claim that the court was required to place J.L. in his custody. Father was incarcerated and J.L. could not be placed in his custody. At the time of his incarceration, father made no plans for J.L. and never acknowledged the risk to J.L. from mother's substance abuse.

Additionally, substantial evidence supported the court's denial of father's reunification services. (*In re James C.* (2003) 104 Cal.App.4th 470, 484 [appellate

4

court reviews order denying reunification services for substantial evidence].)  The juvenile court relied on section 361.5, subdivision (e)(1), which provides in part:  "If the parent or guardian is incarcerated, institutionalized, or detained by the United States Department of Homeland Security, or has been deported to his or her country of origin, the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child.  In determining detriment, the court shall consider the age of the child, the degree of parent-child bonding, the length of the sentence, the length and nature of the treatment, the nature of the crime or illness, the degree of detriment to the child if services are not offered and, for children 10 years of age or older, the child's attitude toward the implementation of family reunification services, the likelihood of the parent's discharge from incarceration, institutionalization, or detention within the reunification time limitations described in subdivision (a), and any other appropriate factors.  In determining the content of reasonable services, the court shall consider the particular barriers to an incarcerated, institutionalized, detained, or deported parent's access to those court-mandated services and ability to maintain contact with his or her child, and shall document this information in the child's case plan.  Reunification services are subject to the applicable time limitations imposed in subdivision (a)."  Subdivision (a)(1)(B) of section 361.5 provides that reunification for a child under three years of age shall be *six months* from the date of the dispositional hearing and no longer than 12 months from the date the child entered foster care.

Here, father—a biological not a presumed father—had *no* relationship with J.L. Father had been incarcerated J.L.'s entire life.  It was undisputed that father would not be released until after the maximum reunification period terminated.  The time period for reunification "is not tolled by a parent's incarceration." (*In re Maria S.* (1997) 60 Cal.App.4th 1309, 1313.)  There was no reasonable probability the juvenile court could have returned J.L. to father's custody within the statutory reunification period of six months or even within the 12-month period from the date J.L. entered foster care.

There was no evidence that J.L. would suffer any detriment from father not receiving any reunification services. Father therefore demonstrated no error in denying him reunification services. (Cf. *In re Jesusa V.* (2004) 32 Cal.4th 588, 601 [stating that father's conviction "rendered it improbable the court would have ordered reunification services [citation], and his incarceration made successful reunification all but impossible"].)

## DISPOSITION

The court's jurisdictional and dispositional orders are affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.